UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
UNITED STATES OF AMERICA

                Plaintiff,

     -against-

GIOVANNI GALLINA, EPIFANIA GALLINA,
CATERINA MIGNANO, FRANCESCA
PIPITONE, ASTORIA FEDERAL SAVINGS
and LOAN ASSOCIATION, and NEW YORK
STATE DEPARTMENT OF TAXATION &
FINANCE, and IDEAL MUTUAL INSURANCE
COMPANY,

                Defendants.
-----------------------------------------------------------X

**REPORT AND RECOMMENDATION**
97-CV-5532 (CBA) (JMA)

A P P E A R A N C E S:

Barry E. Reiferson, Esq.
U.S. Department of Justice
Tax Division
P.O. Box 55 - Ben Franklin Station
Washington D.C., 20044
*Attorney for Plaintiff*

Michael J. Monaghan, Esq.
50 Main Street
Hackensack, N.J. 07601
*Attorney for Mignano & Pipitone*

**AZRACK, United States Magistrate Judge:**

    The United States of America brought this action to reduce to judgment assessed and unpaid income tax liabilities of defendants Giovanni and Epifania Gallina; to establish that the conveyance of the Gallinas' interest in real property located in Maspeth, New York was fraudulent; and to

1

foreclose federal tax liens on the Gallinas' interests in that property. The Government has moved for a default, and the Hon. Carol B. Amon referred the motion to me. For the foregoing reasons, I respectfully recommend that this motion be denied.

Defendants Caterina Mignano and Francesca Pipitone are the daughters of the taxpayers, Giovanni and Epifania Gallina. (Defs.' Mignano and Pipitones' Aff. in Opp'n to Pl.'s Mot. for Default ("Defs.' Aff.") ¶3.) They currently reside in Sicily where they care for their elderly mother, who has become a widow as the result of their father's having succumbed to cancer in 2002. (Id.) They contributed approximately 14% of the purchase price (Mignano, $5,000; Pipitone, $9,000) and are currently joint holders of premises located at 53-46 67th Street in Maspeth, Queens, which the family initially acquired in 1976 for $101,500. (Id. ¶12.)

Beginning in November 1987, the Internal Revenue Service assessed tax liabilities totaling $215,821.47 against Giovanni and Epifania Gallina: 11/2/87 - $149,130.25 for 1981; 11/2/87 - $34,709.64 for 1982; 9/20/90 - $30,882.78 for 1981; 12/30/91 - $1,098.70 for 1990. Complaint ¶12.

One month after the first assessment, on December 3, 1987, in light of Giovanni's failing health, diabetes and Parkinson's disease, the Gallinas conveyed their Maspeth property to Mignano and Pipitone before they returned to Sicily. (Pl.'s Reply 10, Ex. 4.); (Defs.' Mem. in Opp'n 14. (Doc. #33))[1] They aver that consideration, intermingled with events that span more than forty (40) years, supported the transfer: (1) their initial contribution of $14,000; (2) $45,000-$50,000.00 the daughters spent to repair their parents' residence in Sicily, which had been vacant for about 20 years

---

[1] Defendants' opposition, which consists of a cover letter, affirmation of service, joint affirmation of Mignano and Pipitone and a Memorandum of Law, lacks pagination. Therefore, the Court has cited the page numbers assigned by the Eastern District of New York's ECF (electronic court filing) system.

after the parents came to the United States in 1964; (3) Mignano's contributions to the mortgage payments, amounts not specified, from her earnings from 1976 to the conveyance in 1987[2]; and (4) they assumed the outstanding mortgage, which has resulted in payments of $870 per month, plus taxes, insurance, improvements and upkeep since January 1988. *Id.* at 13-14.

In the complaint filed September 23, 1997 in addition to the taxpayers and their transferees the Government included other defendants each of which may claim an interest in the property, although what that interest may be has not been alleged. Complaint ¶¶7-9. With respect to service, the docket sheet discloses returns as to the taxpayers, the process having been left with Francesca Gallina, and waivers of service by the other defendants.[3] Mignano challenges the waiver attributed to her. In a supplemental affidavit (doc. #41), she recites the events which led her to question the waiver of service, which she claims to have first examined at her attorney's office on May 22, 2007. After seeing the documents, she denies that the signature attributed to her is hers and that she authorized anyone to sign for her. She offers a similar observation about the signature attributed to her sister and blames the state of the documents on her brother, Salvatore, who along with her brothers had handled this matter without the knowledge or permission of the other parties. Although her affidavit suggests that a traverse or contravention hearing might be in order, the record discloses

---

[2] From June 1979 forward she lived with her husband in an apartment at the house.

[3] Pursuant to doc. #17, the Government agreed that the matter should be dismissed with prejudice as against Astoria Federal, which disclaimed any interest in the property. Because Ideal Mutual is in liquidation, *Matter of Ideal Mutual Ins. Co.*, No. 40275/85 (N.Y. Sup. Ct. Feb. 7, 1985) (*available at* http://www.nylb.org/Ideal.htm, follow Order of Liquidation hyperlink), its interest is in notice of a sale and surplus funds if there are any. Gov't Reply at 3 (doc. #34). Apart from waiving personal service, the State Department of Taxation and Finance has not participated. As a practical matter, given the record with respect to these defendants, the only defendants at issue on the Government's application are Mignano and Pipitone.

an answer by the daughters, doc. #27, albeit late, with eight (8) affirmative defenses, none of which challenges this court's jurisdiction over them personally.

The Court of Appeals for the Second Circuit has set forth the relevant legal principle as follows:

> Waiver of the defenses of insufficiency of service of process and lack of personal jurisdiction is generally governed by Fed.R.Civ.P. 12(h)(1), which establishes that
>
>> [a] defense of lack of jurisdiction over the person,... insufficiency of process, or insufficiency of service of process is waived...if it is neither made by motion under this rule nor included in a responsive pleading or an amendment thereof permitted by Rule 15(a) to be made as a matter of course.
>
> Rue 12(h)(1) "advises a litigant to exercise great diligence in challenging personal jurisdiction...or service of process. If [she] wishes to raise [either] of these defense [she] must do so at the time [she] makes [her] first significant defensive move...." 5A Charles Alan Wright & Arthur Miller, Federal Practice and Procedure §1391 (1990).

*Transaero, Inc. v. La Fuerza Aerea Boliviana*, 162 F.3d 724, 729-730 (2d Cir. 1996). Therefore, the record contains no issue concerning this court's exercise of personal jurisdiction over the daughters. *See Strauss v. Credit Lyonnais, S.A.*, 242 F.R.D. 199, 204 n. 5 (E.D.N.Y. 2007).

Issue did not join however because the Government accepted the taxpayers' offer, submitted through their son, Salvatore, to settle all issues disputed in the case. Pursuant to the 1998 settlement, the taxpayers consented to a stipulation for entry of judgment against them for the unpaid assessed amounts and to pay a sum to the Government (Exhibit to doc. #15).

Upon receipt of advice by counsel that the case had been settled, on April 14, 1998 then Judge Chrein reported to your Honor that a stipulation of discontinuance would be filed shortly. Apparently in response, on April 16, 1998 your Honor entered an order which discontinued the action without prejudice to the right to reopen if the settlement was not consummated. Doc. #11.

4

As best as I can determine from the record, which partially predates the electronic case filing system, the only claims which had actually been resolved were those against the taxpayers. If the settlement had been consummated, the claims concerning the other defendants should have been moot.

When the Government's efforts to secure payment from the taxpayers through their son, Salvatore, failed, it moved to reopen the case against Mignano and Pipitone and for entry of judgment against the taxpayers consistent with the stipulation. Doc. #14. Your Honor granted this application, doc. #16, and the clerk appears to have reopened the case and mistakenly closed it on the same day, February 18, 1999, following which the clerk entered a partial judgment against the taxpayers, doc. #18, which resolved the case as against the taxpayers. The issues of foreclosing on tax liens which the Government alleged had attached to the Maspeth property and/or setting aside the allegedly fraudulent 1987 conveyance to the daughters remained extant.

In a letter to your Honor dated March 3, 2006, doc. #21, the purpose of which was to explain the necessity for reopening the case some seven (7) years after it had been closed, the Government endeavored to explain the rationale which had led back to this forum. The Government tried to revive the settlement. By the middle of 2003 the Government realized that it would not be successful in its attempts to reach a "true" settlement, whatever that means, concerning the fraudulent conveyance and lien foreclosure claims. In light of the fact that the case had been closed on the Court's docket, the Government contemplated a second lawsuit to deal with these claims. As they explained it, their failure to act stemmed from attorneys with heavy workloads, absence of issue with a statute of limitations and the lack of fungibility of real property, all of which diminished the urgency for action. Since that period of inactivity, the Maspeth property has appreciated in value, which increased the likelihood of collecting in full, and a new attorney was assigned to the matter.

But, not so as to motivate an immediate application in this Court.

Attorney Reiferson, now assigned to the matter, apparently also discovered that the close knit Italian family was not above suing each other. Pipitone, who lives in Sicily, had sued her sister and others in New York with respect to different realty that the parents had conveyed to their daughters.[4] In 2005 Reiferson learned that Mignano, who also lives in Sicily, was avoiding service of process. The new game plan: wait for a year to see if Pipitone's attorney serves Mignano and when he does intervene in the state court action and then remove it to federal court. The Government does not explain why it reasonably believed that Pipitone's attorney would be successful, and after he had gotten nowhere, the Government realized that it would have the same problem with service of process if it pursued Mignano. The new responsive plan: the Government asked your Honor to reopen the case and dismiss the lien foreclosure and fraudulent conveyance claims without prejudice, which would produce a final judgment in this matter and, as the Government puts it, "eliminate possible procedural impediments...." to starting a new lawsuit. Thus, in terms of timing, the Government appears to have been willing to accept dismissal of the case without prejudice against Mignano and Pipitone on or about March 23, 2006, the date the Court reopened the matter, commencement of a new lawsuit on or about April 14, 2006, the date the Government filed this motion for default, and if the defendants waived personal service, a likely timely answer on or about June 22, 2006, the date Mignano and Pipitone filed an answer. In effect therefore, if the Court had declined to reopen this matter, Mignano and Pipitone would have had an opportunity to defend the lien foreclosure and fraudulent conveyance claims with a timely answer filed at about the same time

---

[4]In a letter dated 2/8/07 Pipitone's attorney advises that the "Francesca Pipitone" who is the plaintiff in that case is actually Pipitone's aunt, Epifania's sister.

their answer was filed, but because the Court reopened the matter, the Government argues they should now be considered in default for having filed a late answer.

The Federal Rules of Civil Procedure may not adequately speak to the circumstances of this case. Rule 55(a) contemplates that the Clerk will enter a party's default on the plaintiff's request. "Then, pursuant to Rule 55(c), the defendant has an opportunity to seek to have the default set aside." *Meehan v. Snow*, 652 F.2d 274, 276 (2d Cir. 1981) (*per curiam*). Here, the threshold event never occurred and probably would never have occurred because the Clerk closed the case. However, nothing prevented the Government from moving the Court, either through the Clerk or a judge, to enter or note the default of Mignano and Pipitone, except perhaps the ongoing settlement negotiations, which, by the Government's own statement had ended in 2003. Significantly, the Government was negotiating with an agent, Salvatore, who Mignano claims had no authority to speak for her. Not unsurprisingly therefore, Mignano and Pipitone, faced with the Government's application for a default, submitted themselves to this Court's jurisdiction by filing an answer.

Contrary to the Government's assertion, the facts of this case do not neatly lend themselves to application of the rule that "[t]he filing of a late answer is analogous to a motion to vacate a default." *John v. Sotheby's*, 141 F.R.D. 29, 35 (S.D.N.Y. 1992). Even if they did, "because defaults are generally disfavored and are reserved for rare occasions, when doubt exists as to whether a default should be granted or vacated, the doubt should be resolved in favor of the defaulting party." *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993).

Rule 55(c) authorizes the Court to set aside a default for good cause shown. Because Rule 55(c) does not define the term "good cause", the Court of Appeals has directed District Courts to assess three (3) criteria to determine whether to relieve a party from a default: (1) whether the default

7

was willful; (2) whether setting aside the default would prejudice the adversary; and (3) whether a meritorious defense is presented. *Id.; Argus Research Group, Inc. v. Argus Securities, Inc.*, 204 F. Supp. 2d 529, 531 (E.D.N.Y. 2002). The Court must consider all of the factors and may exercise discretion in making the determination. *Commercial Bank of Kuwait v. Rafidain Bank*, 15 F.3d 238, 243 (2d Cir. 1994). The Court applies the same standards when, as here, a defendant opposes a motion for default. *Credit Lyonnais Securities (USA) v. Alcantara*, 183 F.3d 151, 154 (2d Cir. 1999); *Arthur F. Williams, Inc. v. Helbig*, 202 F.R.D. 41, 44 (E.D.N.Y. 2002).

The record does not persuade me to find that the default was willful. The Government is probably the only plaintiff who could ignore this matter as long as it did and claim, as it does, that Mignano and Pipitone did nothing to move the case forward. Parties intent on ignoring a lawsuit do not engage in settlement negotiations, as occurred here, and the responsibility for moving cases forward lies with the plaintiff.[5] The Government relies on the closing of a case that isn't really over as a reason for not moving forward; yet the defendant may not do the same. Discretion does not favor visiting a harsh consequence of what may be the Court's clerical mistake on either party.

The Government claims to have suffered prejudice because it cannot rebut the allegations concerning the reason for the conveyance in light of Giovanni Gallina's death and his widow's deteriorating health. As a result of discovery now being unavailable from the transferors, the Government accuses Mignano and Pipitone of collusion concerning the reason for the transfer and

---

[5] I have arrived at this conclusion without considering the credibility of Mignano or Pipitone concerning their shock and surprise that the case was not actually settled and their belief that the case was aimed primarily at their parents. The circumstance of their attorney having participated in the settlement negotiations strongly suggests that he merely neglected to file an answer or did not want to impose additional cost on a case that should have been settled. *See S.E.C. v. McNulty*, 137 F.3d 732, 739 (2d Cir. 1998) (in the context of default willfulness refers to conduct that is more than merely negligent or careless).

its characterization as a sale. As if collusion could not/would not have happened even if Gallina were still alive. Assuming that your Honor denies the Government's motion for default, the parties to the conveyance, including Mrs. Gallina, should be prepared to present themselves at a mutually agreeable time and location in New York for deposition by the Government if the Government so chooses. Cross-examination remains an effective tool to battle collusion and in this case, the parties should remember that, in addition to the depositions, cross-examination will occur before the Court as the trier of fact.

> To satisfy the criterion of a "meritorious defense," the defense need not be ultimately persuasive at this stage. "A defense is meritorious if it is good at law so as to give the factfinder some determination to make."

*American Alliance Ins. Co., Ltd. v. Eagle Ins. Co.*, 92 F.3d 57, 61 (2d Cir. 1996); *see S.E.C. v. McNulty*, 137 F.3d 732, 740 (2d Cir.), *cert. denied*, 525 U.S. 931 (1998). Along with the other factors, this factor should be construed generously. *State Street Bank and Trust Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 169 (2d Cir. 2004). A review of the record in light of the applicable legal principles has persuaded this Court that Mignano and Pipitone have sufficiently raised issues, which may need to be resolved through a trial, that they should not be held in default.[6]

26 U.S.C. §6321 "authorizes the imposition by the Government of a tax lien upon property of the taxpayer when he is in default." *United States v. 110-118 Riverside Tenants Corp.*, 886 F.2d 514, 518 (2d Cir. 1989), *cert. denied*, 495 U.S. 956 (1990). Pursuant to 26 U.S.C. §6322, the lien arises "at the time that the assessment is made and continues until the amount of liability set forth in the assessment is satisfied." *United States v. McCombs*, 30 F.3d 310, 321 (2d Cir. 1994). Under

---

[6]Unlike the presumption of innocence which remains with the defendant until a verdict to the contrary, the generosity associated with avoiding a default is unlikely to influence the trial in this case.

26 U.S.C. §6323(a) the lien is not valid as against any purchaser until notice has been filed which meets the requirements of 26 U.S.C. §6232(f). As the Court of Appeals explained in *McCombs*, pursuant to 26 U.S.C. §6323(f)(4) the priority of interests in realty in New York as between the Government and a purchaser is the first to record is first in right. *Id.* For purposes of determining the priority of the lien, the statute defines a "purchaser" as "a person who, for adequate and full consideration in money or money's worth, acquires an interest (other than a lien or security interest) in property which is valid under local law against subsequent purchasers without actual notice." 26 U.S.C. §6323(h)(6). Adequate and full consideration requires "consideration in money or money's worth having a reasonable relationship to the true value of the interest in the property acquired." 26 C.F.R. §301.6323(h)-l(f)(3). "'Money or money's worth' is defined in the regulation to include 'tangible or intangible property, services and other consideration reducible to a money value,' but excluding such things as 'love and affection . . . or any other consideration not reducible to a money value.'" *United States v. Sweeny*, 418 F. Supp. 2d 492, 497 (S.D.N.Y. 2006). By virtue of having recorded their transfer ahead of the Government's notice, *see* Complaint ¶¶13, 22, and their monetary contributions with respect to the property and their parents' home in Sicily, Mignano and Pipitone contend that they are "purchasers" within the meaning of the statute. In response, the Government relies on cases, all at the trial level, which indicate that past and future considerations are inadequate to protect a transferee from a tax lien. The Second Circuit has not yet addressed whether and/or how past or future considerations affect a transferee with respect to a federal tax lien. *Id.*

With respect to past considerations, the *Sweeny* court cited authority for the proposition that past payments do not count for purposes of determining whether a transferee is a purchaser protected

from a tax lien. In each of these cases, however, the past payment(s) were wholly unrelated to the property transferred. *United States v. Phillips,* 714 F. Supp. 81, 84 (S.D.N.Y. 1989) (taxpayer assigned royalties from intellectual property to pay off debts evidenced by promissory notes); *United States v. Paladin,* 539 F. Supp. 100, 103 (W.D.N.Y. 1982) (taxpayer assigned insurance proceeds to individual who had paid the taxpayer's prior debts); *United States v. Pavenick,* 197 F. Supp. 257, 259 (D.N.J. 1961) (taxpayer assigned corporate stock to wife to repay past debts he owed to her); *United States v. Franklin Fed. Sav. & Loan A'ssn,* 140 F. Supp. 286, 287 (M.D. Pa. 1956) (taxpayer assigned a debt owed to him to a third party to pay a debt owed to that party). In *Sweeny* the past payments were carrying costs on real estate. In contrast, in this case Pipitone and Mignano contributed to the purchase price of the transferred property and Mignano paid part of the mortgage secured by the property for more than ten (10) years. The payments for repairs to the house in Sicily may be more problematic, but the details of those payments have yet to be revealed. Both from a subjective standpoint, their own, and an objective standpoint, the Court's, Mignano and Pipitone, if credible, had a reasonable expectation that their efforts had contributed to this realty so as to give them a bonafide interest in it.

A similar observation applies to the post transfer assumption of the mortgage, the details of which have not been disclosed except as to the monthly payment. In *Sweeny* the case fell within the rule that an unenforceable promise of future support was not adequate consideration. 418 F. Supp.2d at 498. The rationale behind this rule is obvious. Apart from whether the transferor may enforce a promise, which in the context of an intrafamilial transfer is unlikely ever to occur, the bona fides of the promise remain to be seen in the future, if ever. By contrast again, here the transferees are in their tenth year post transfer of paying the mortgage and other expenses of the property. The promise

of future payments has not turned out to be hollow.

The distinctions set forth above remove this matter from the authorities relied upon by the Government to obtain, in essence, summary judgment where there has been no discovery. In addition to the factual gaps, which ought to be filled in, the record contains nothing about the fair market value of the property at the time of the transfer. Without a determination of the fair market value at the time of the transfer, the Court cannot assess whether the relevant consideration(s), once determined, and the true value of the property acquired are sufficiently close. *See United States v. McCombs*, 928 F. Supp. 261, 268 (W.D.N.Y. 1995) (citing cases). The record contains nothing which suggests that the fair market value of the property at the time of the transfer is not ascertainable even at this late date.

Apart from the material which needs to be gathered, the parties probably have not considered the possibility that the evidence at trial will persuade the Court to apply an arguably novel legal principle with respect to the tax lien in this case. In *McCombs, supra,* and at least one case cited therein, fairly substantial partial considerations for the property transferred, sixty-seven percent (67%) in *McCombs*, did not transform the transferee into a purchaser. No consideration was given, however, to the fact that a substantial partial consideration may evidence that the taxpayer transferred more of the fee than the transferee had purchased or was otherwise entitled to. In such circumstances, and the statute, §6323, is silent on the subject, a court might well determine that the tax lien attaches only to that part of the fee to which an otherwise innocent transferee is entitled by virtue of having paid substantial consideration. The application of this principle in this case might hypothetically result in a finding that Mignano or Pipitone, who each received a half interest in the whole, actually only contributed consideration which entitled Mignano to a four tenths interest (40%)

and Pipitone to a two tenths interest (20%) in the whole. In this circumstance the Court would conclude that the lien attached only to a four tenths interest (40%) of the whole. Although this theoretical eventuality would not prevent the Government from foreclosing on its lien and selling the property, only forty percent (40%) of the proceeds of the sale would be available to apply to the judgment against the taxpayers, and I would anticipate that the expenses associated with the lien foreclosure sale would be paid entirely from the Government's share of the proceeds.

As to its arguments regarding the fraudulent conveyance claim, the Government did not have the benefit of this report's findings concerning the need for discovery on the issue of consideration. The Government presumed that the evidence offered was inadequate for Mignano and Pipitone to sustain their burden of proof with respect to fair consideration under N.Y. Debtor & Creditor Law §273. *See United States v. McCombs,* 30 F.3d 310, 324 (2d Cir. 1994). Section 273 provides: "Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration." Intent may not matter under this statute, but solvency does, and on this point, the record contains a perfectly matched set of pleadings. The Complaint ¶23 alleges the taxpayers' insolvency on information and belief and the Answer ¶23 denies ¶23 of the Complaint. Assuming as the Government does that Mignano and Pipitone must also demonstrate that the transfer at issue did not render the taxpayers insolvent, the presumption of insolvency, which may arise from proof of an absence of fair consideration, *see United States v. Mazzeo,* 306 F. Supp.2d 294, 306 (E.D.N.Y. 2004), has not yet attached.

With respect to a conveyance based upon the transferor's actual intent to defraud creditors under N.Y. Debtor & Creditor Law §276, the Government bears the burden of proving the actual

13

intent by clear and convincing evidence. *McCombs, supra,* 30 F.3d at 327-28. The Government relies on the observation that "'[t]he fraudulent nature of a conveyance may be inferred from the relationship among the parties to the transaction and the secrecy of the sale, or from inadequacy of consideration and hasty, unusual transactions.'" *Id.* (citations omitted). While the transfer may have been intrafamilial and hasty and the trier of fact may be persuaded to infer the intent to defraud in part from the circumstances under which it occurred, what with the largest portion of the assessments having been made prior to it, the matter of the adequacy of consideration remains to be determined and the transfer was not exactly secret, having been recorded.[7]

In sum, viewing the record in a light generous to Mignano and Pipitone, the Court concludes that they may be able to prevail after discovery necessary to fill in the gaps and a trial. Given the length of the pendency of this matter, if the Court agrees with this report and recommendation, discovery will be placed on the fast track.

Based on the foregoing, I respectfully recommend that the Government's motion for a default judgment against Mignano and Pipitone be denied.

## NOTICE

Pursuant to 28 U.S.C. §636(b)(1), as amended, and Rule 72(b), Fed.R.Civ.P. the parties shall have ten (10) days, plus an additional three (3) days, pursuant to Rule 6(e), Fed.R.Civ.P., or a total of thirteen (13) working days, (see Rule 6(a), Fed.R.Civ.P.), from the date hereof, to file objections, if any, to this Report and Recommendation with the Clerk of the Court through the Court's electronic

---

[7] I have difficulty in comprehending exactly what constitutes a "secret" sale in the context of a federal tax lien. If the allegedly fraudulent transfer is not recorded in due course in New York, the Government may file its lien ahead of the transfer and thereby establish its priority.

14

case filing (ECF) system. A written copy of such objections should also be delivered to the chambers of The Honorable Carol B. Amon, United States Courthouse, 225 Cadman Plaza East Room 908S, Brooklyn, New York 11201, and to the chambers of the undersigned at the said Courthouse Room 1210S.

Failure to file timely objections to this Report and Recommendation will preclude later appellate review of any order or judgment that will be entered by Judge Amon. See Thomas v. Arn, 474 U.S. 140 (1985); Frank v. Johnson, 968 F.2d 298 (2d Cir.), cert. denied, 113 S.Ct. 825 (1992); Small v. Secretary of H.H.S., 892 F.2d 15, 16 (2d Cir. 1989) (per curiam); Wesolek v. Canadair, Ltd., 838 F.2d 55, 58 (2d Cir. 1988). Requests for extensions of time to file objections must be made to Judge Amon and should not be made to the undersigned.

Dated: November 20, 2007

Brooklyn, New York

/s/ JOAN M. AZRACK
JOAN M. AZRACK
UNITED STATES MAGISTRATE JUDGE

15