UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
UNITED STATES OF AMERICA,

                        Plaintiff,

  -against-

GIOVANNI GALLINA, EPIFANIA
GALLINA, CATERINA MIGNANO,
FRANCESCA PIPITONE, ASTORIA FED.
SAV. AND LOAN ASSOC., IDEAL
MUTUAL INS. CO., and NEW YORK STATE
DEP'T OF TAXATION AND FINANCE

                        Defendants.
------------------------------------------------------------------X

**REPORT AND RECOMMENDATION**

97–CV–5532 (CBA) (JMA)

A P P E A R A N C E S:

Rebecca Israel, Esq.
U.S. Department of Justice, Tax Division
P.O. Box 55, Ben Franklin Station
Washington, DC 20044
    *Attorney for Plaintiff*

Michael Monaghan, Esq.
50 Main Street
Hackensack, New Jersey 07601
    *Attorney for Defendants Caterina Mignano*
    *and Francesca Pipitone*

**AZRACK**, **United States Magistrate Judge:**

On September 23, 1997, the United States (the "government") brought an action pursuant to 26 U.S.C. §§ 7401, 7402(a), and 7403 against Giovanni and Epifania Gallina (the "Gallinas"), Caterina Mignano, Francesca Pipitone, Astoria Federal Savings and Loan Association, Ideal Mutual Insurance Company, and the New York State Department of Taxation and Finance to reduce to judgment certain assessed and unpaid income tax liabilities against the Gallinas (Count I) and determine that federal tax liens attached to and remain upon the Gallinas' interest in a

1

parcel of real property located at 53-46 67th Street, Maspeth, New York (Count II) (the "Maspeth property" or "the property"). (ECF No. 1 ("Compl.").) The government also alleged that the Gallinas conveyed the Maspeth property to Caterina Mignano and Francesca Pipitone ("Caterina" and "Francesca," respectively, and the "daughters," collectively) subject to the liens (Count III) and fraudulently as to the government as a creditor (Count IV). (ECF Nos. 1, 19.) The government sought declarations on the above counts and an order foreclosing the liens upon the Maspeth property to satisfy the tax liabilities. (Compl.)

On May 21, 2010, the government moved for partial summary judgment on Counts I, II, and III of the complaint pursuant to Rule 56 of the Federal Rules of Civil Procedure.[1] (ECF No. 73.) In opposing the motion, Caterina and Francesca argue that the taxes assessed against the Gallinas are not valid, and that they constitute "purchasers" of the Maspeth property within the meaning of 26 U.S.C. § 6323. The Honorable Carol B. Amon referred the motion to me for a Report & Recommendation ("R&R"). (ECF Entry dated Jan. 4, 2010; ECF No. 76.)

I recommend that the Court grant partial summary judgment. The Court reduced to judgment the assessed and unpaid income taxes against the Gallinas in 1999, and Caterina and Francesca are precluded from challenging this judgment. Further, there is no evidence that the daughters are "purchasers" of the Maspeth property. Therefore, the federal tax liens attached to the property when the government assessed the unpaid income taxes against the Gallinas and remain on the Maspeth property despite the conveyance of the property to Caterina and Francesca. The government may foreclose the liens upon the property.

## I. Undisputed Facts

Caterina and Francesca are the Gallinas' daughters. (Compl. ¶ 22.) On October 22, 1975, the Gallinas purchased the Maspeth property for $101,500 with a $36,000 down-payment

---

[1] The parties agreed to address Count IV subsequent to the resolution of this motion. (ECF No. 64.)

2

and a $65,000 mortgage.² (Pl.'s 56.1 Stmt. ¶ 1; Pl.'s Ex. 1; Defs.' Reply to Pl.'s 56.1 Stmt. ¶ 1.) The daughters "participated in buying the house" by contributing $14,000 to the down-payment, with Caterina giving $5,000 and Francesca giving $9,000. (Pl.'s Ex. 4 ¶¶ 24–25, Pl.'s Ex. 5 ¶ 25, 37; Defs.' 56.1 Stmt. ¶¶ 2–3.) Tenants inhabited the Maspeth property and their rent covered the monthly mortgage payments of $870; the daughters made the payments when a vacancy occurred. (Pl.'s Ex. 5 ¶ 52; Defs.' 56.1 Stmt. ¶ 5; Defs.' Opp. to Pl.'s Motion for Entry of Default ¶¶ 19–20.) Caterina and Francesca also paid the taxes, insurance, and upkeep on the property.³ (Defs.' 56.1 Stmt. ¶ 5; Defs.' Opp. to Pl.'s Motion for Entry of Default ¶¶ 19–20.)

The Gallinas filed their income tax returns for the 1981 and 1982 tax periods in a timely manner. (Pl.'s Ex. 2.) The government determined that the Gallinas underpaid their taxes and, on November 2, 1987, assessed $149,130.35 in unpaid income taxes and fraud penalties for the 1981 tax period and $34,869.64 in unpaid income taxes and fraud penalties for the 1982 tax period. (Compl. ¶ 12; Pl.'s 56.1 Stmt. ¶ 2; Pl.'s Ex. 2; Defs.' Reply to Pl.'s 56.1 Stmt. ¶ 2.) One month later, the Gallinas transferred the Maspeth property's title to their daughters by written contract. (Compl. ¶ 22; Pl.'s 56.1 Stmt. ¶ 3; Pl.'s Ex. 3; Defs.' Reply to Pl.'s 56.1 Stmt. ¶ 3.) No one obtained an appraisal of the property. (Pl.'s 56.1 Stmt. ¶ 9; Pl.'s Ex. 4 ¶ 27; Pl.'s Ex. 5 ¶ 27; Defs.' Reply to Pl.'s 56.1 Stmt. ¶ 9.) The boilerplate language in the title–transfer document states that Caterina and Francesca gave "Ten Dollars and other valuable consideration" for the transfer. (Pl.'s Ex. 3.)

In response to the government's requests for admissions, Francesca stated, "[N]o actual money was paid upon the transfer for the Maspeth property. Again formal consideration has

---

² There is no accounting for the remaining $500 of the purchase price.

³ The daughters have no record of any of these contributions. (Pl.'s Ex. 4 ¶¶ 28, 38–39; Pl.'s Ex. 5 ¶ 38–39.) Francesca admitted, "There's no evidence that we pay any amount." (Pl.'s Ex. 5 ¶ 39.)

3

been paid during the past 30 years of caring" for the Gallinas.[4]  (Pl.'s Ex. 5 ¶ 25.)  Indeed, "The only formal consideration that was paid towards the transfer of the Maspeth property was to accept from both us the caring of our parents for the remain of their lives."  (Id. ¶ 26.)  Caterina also averred, "The formal consideration towards the transfer of the Maspeth property was the taking care of our parents . . . . Not in monetary consideration, but in fact of human resources we had giving a lot."  (Pl.'s Ex. 4 ¶ 26, 29.)  Francesca explained, "There was no intent in helping our parents in restoring the Maspeth property in the mid 80's, for a later transfer of the title."  (Pl.'s Ex. 5 ¶ 40.)  She also conceded, "If the question is strictly related to monetary consideration we have to admit that the transfer did not bore reasonable relationship."  (Id. ¶ 29.)

On December 9, 1987, Caterina and Francesca recorded the title transfer with the Queens County Clerk in Jamaica, New York.  (Compl. ¶ 22; Pl.'s Ex 3; Defs.' 56.1 Stmt. ¶ 5.)  After providing the initial statutory notice of the assessments for the 1981 and 1982 tax periods and demanding payment, the government notified the Gallinas three times of their tax liabilities.  (Pl.'s Ex. 2.)  The Gallinas failed to pay the assessments.  (Compl. ¶ 14.)  On June 17, 1988, the government filed notice of a federal tax lien on the Maspeth property with the Queens County Clerk.  (Id. ¶ 18.)  On September 20, 1990, the government assessed against the Gallinas an additional $30,882.78 in unpaid income taxes and fraud penalties for the 1981 tax period and provided statutory notice of the deficiency demanding payment.  (Id. ¶¶ 12–13.)  Again, the Gallinas failed to pay.  (Id. ¶ 14.)  The government recorded a lien with the Queens County Clerk on March 13, 1991.  (Id. ¶ 18.)

On September 23, 1997, the government filed this action against the Gallinas and named Caterina and Francesca as parties pursuant to 26 U.S.C. § 7403(b) because they "may claim an

---

[4] The daughters' statements are drawn from their written responses to the government's requests for admissions proffered in 2006 and reflect their unaltered choice of words.  (Pl.'s Exs. 4, 5.)

interest in the real property at issue in this suit." (Id. ¶¶ 3–4.) By this time, the Gallinas and their daughters resided in Italy. (Id. ¶¶ 5–6; Pl.'s Ex. 4 ¶ 24.) During the 1990s, Caterina and Francesca restored the Gallinas' residence in Sicily for approximately $45,000-$50,000. (Pl.'s Ex. 4 ¶ 44, 46; Pl.'s Ex. 5 ¶ 44; Defs.' 56.1 Stmt ¶ 5.) Caterina explained, "By donating the Maspeth property to us, it was understood that restoring the residence in Sicily was something to be done." (Pl.'s Ex. 4 ¶ 45.) Francesca agreed, "It was our understanding based upon the fact that my parents donated the Maspeth property to us, that we would help them in all their need, including restoring their residence in Sicily." (Pl.'s Ex. 5 ¶ 45.)

On December 16, 1997, Salvatore Gallina, the Gallinas' son and Caterina and Francesca's brother, wrote the Court requesting an extension of time to answer the complaint because "we are trying to work out a settlement." (ECF No. 2.) On March 27, 1998, the government accepted the Gallinas' promise to pay "a lump sum of $200,000, in full settlement of those portions of the Government's suit which sought a declaration concerning the fraudulent conveyance of . . . [the Maspeth property], and the foreclosure of its federal tax liens as to such property." (ECF Nos. 10, 11, 13, 77; Pl.'s Reply Mem. 5.) Pursuant to the terms of the settlement, the Gallinas "consent[ed] to the entry of judgment against them for the unpaid assessed and accrued income tax, penalty, and interest liabilities for years 1981, 1982, and 1990."[5] (ECF No. 77.)

The Gallinas executed the Consent Stipulation for Entry of Judgment, which states that the Gallinas:

---

[5] The Complaint alleges that the Gallinas owe $1,098.70 in assessed and unpaid income taxes for the 1990 tax period. (Compl. ¶ 12.) The government filed notice of the attendant liens with the Queens County Clerk on March 23, 1992. (Id. ¶ 18.) The judgment entered by the Court on February 18, 1999, for $215,821.47 includes this amount. (ECF No. 16.) However, the government failed to provide a Certificate of Assessment and Payments for the 1990 tax period and has not moved to foreclose this particular assessed and unpaid income tax liability and lien on the property.

5

> [A]greed that judgment may be entered in favor of the United States as to Count I . . . for the unpaid assessed balance of income taxes, penalties, and interest for the taxable years ending December 31, 1981, December 31, 1982, and December 31, 1990 and related interest and penalties, in the total amount of $215,918.47 (representing $180,110.13 for the 1981 year, $34,709.64 for the 1982 year, and $1,098.70 for the 1990 year) plus accrued but unassessed interest and additions to tax as allowed by law.

(ECF No. 15.) The government agreed upon receipt of a certified bank check for $200,000 to "cease prosecution of this case and file, with the United States District Court, the Stipulation for Entry of Judgment and a Notice of Voluntary Dismissal, with prejudice, as to the remainder of the complaint." (ECF No. 77.) When the Honorable A. Simon Chrein, U.S.M.J., notified the Court of this settlement, the Court discontinued the action "without prejudice to the right to reopen the action if the settlement is not consummated." (ECF Nos. 10, 11.) Despite the fact that the government's attorney had "several telephone conversations with Salvatore Gallina in an effort to secure the required payment under the settlement agreement," the Gallinas failed to pay the lump sum within the agreed-upon ninety days. (ECF No. 15.)

On November 3, 1998, the government moved to reopen the case "in order to file the Stipulation for Entry of Judgment and continue litigation as to all matters not covered by the stipulation." (ECF No. 14.) The Court reopened the case on February 5, 1999, and entered judgment against the Gallinas in favor of the government as to Count I in the total amount of $215,821.47, plus interest accruing from the dates of the assessments until satisfaction of the judgment. (ECF No. 16.) The Gallinas did not oppose the government's motion. (Id.) The Clerk of Court entered judgment consistent with the Court's Order, reopening and closing the case on the same day. (ECF Nos. 18, 19.) The Gallinas have not satisfied the judgment. (ECF No. 21.)

On February 3, 2006, the government returned to the Court to reopen the case to pursue the fraudulent conveyance claims against the daughters and foreclose the tax liens upon the Maspeth property.[6] (ECF No. 19.) The Court granted the application and the government moved for entry of default judgment against the daughters, Astoria Federal Savings and Loan Association, and Ideal Mutual Insurance, which the Court denied because Caterina and Francesca answered on June 22, 2006.[7] (ECF Nos. 22–29, 55.) Discovery commenced on November 13, 2006, and closed on February 23, 2010. (ECF Nos. 30, 70.)

As of August 4, 2009, the Certificates of Assessment & Payment reflect that the Gallinas owe $180,204.13 for the 1981 tax period and $34,869.64 for the 1982 tax period, for the total amount of $215,073.77, not including interest that has been accruing since 1987. (Pl.'s Ex. 2.)

## II.     Discussion

### A.  Summary Judgment Standard

Summary judgment may be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A dispute regarding a material fact is genuine if there is sufficient evidence from which a reasonable jury can return a verdict for the non-movant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The burden is on the movant to

---

[6] The government explained that the case should not have been closed in 1999 when judgment as to Count I was entered because the government stated its intention to pursue Counts II, III, and IV, though conceded "a heavy attorney workload," as well as strategic concerns, caused the protracted delay in asking the Court to reopen the case to pursue the additional counts. (ECF No. 21.)

[7] The Court dismissed Astoria Federal Savings and Loan Association from the action because the Gallinas satisfied the mortgage in 2005. (ECF No. 24.) The Superintendant of Insurance of the State of New York, acting as Liquidator, filed a notice of appearance and waiver in foreclosure on behalf of Ideal Mutual Insurance Company. (ECF No. 31.)

establish that no genuine factual dispute exists. Celotex Corp., 477 U.S. at 323–25; Citizens Bank of Clearwater v. Hunt, 927 F.2d 707, 710 (2d Cir. 1991).

The burden then shifts to the non-movant to come forward with "specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (noting that the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts"); Am. Ins. Co. v. N.Y. City Health & Hosps. Corp., 265 F. Supp. 2d 434, 437 (S.D.N.Y. 2003) ("The moving party, in other words, does not bear the burden of disproving an essential element of the non-moving party's claim."). If there is any evidence in the record from which a reasonable inference could be drawn in favor of the non-movant on an issue on which summary judgment is sought, summary judgment is inappropriate. United States v. Everoff, No. 00–CV–6029, 2003 U.S. Dist. LEXIS 20885, at *22–23 (E.D.N.Y. Sept. 30, 2003) (quoting Matsushita Elec. Indus. Co., 475 U.S. at 587). If there is no such evidence in the record, summary judgment must be granted. Citizens Bank of Clearwater, 927 F.2d at 710 (quoting Matsushita Elec. Indus. Co., 475 U.S. at 587).

### B. The Government Has Valid and Subsisting Liens on the Maspeth Property

Congress authorized the government to inquire, determine, and assess all taxes that have not been duly paid, as well as to assess penalties and interest where appropriate. 26 U.S.C. § 6201. When a taxpayer fails to pay assessed taxes after a demand from the government, a statutory lien in the amount of the deficiency arises in favor of the United States on "all property and rights to property, whether real or personal, belonging to such person." 26 U.S.C. § 6321; United States v. Moskowitz, Passman & Edelman, 603 F.3d 162, 165 (2d Cir. 2010) (explaining that Congress "armed" the IRS "with a sword to yield" for collecting unpaid income taxes by

8

creating the lien-foreclosure cause of action, 26 U.S.C. § 7403); United States v. Evseroff, 270 Fed. Appx. 75, 76 (2d Cir. 2008).

The lien attaches automatically to every interest in property that the taxpayer may have on the date of the tax assessment and remains on the property until the taxpayer satisfies the liability or the statute of limitations bars collection. 26 U.S.C. §§ 6321, 6322, 6502(a); Moskowitz, Passman & Edelman, 603 F.3d at 165; Tudisco v. United States (In re Tudisco), 183 F.3d 133, 139 (2d Cir. 1999) (citing United States v. Nat'l Bank of Commerce, 472 U.S. 713 (1985)); Bourque v. United States (In re Borque), 123 F.3d 705, 706 (2d Cir. 1997).

The government determined that the Gallinas failed to pay sufficient income taxes for the 1981 and 1982 tax periods and assessed the unpaid taxes and fraud penalties. The federal tax liens attached automatically to the Gallinas' Maspeth property.

Caterina and Francesca argue that the liens no longer attach to the property after the Gallinas transferred title to them because the tax assessments against the Gallinas are not valid, and they constitute "purchasers" of the Maspeth property within the meaning of 26 U.S.C. § 6323. Summary judgment is warranted because there is no genuine issue of fact regarding the preclusive effect of the Court's 1999 judgment or the daughters' status as "purchasers."

### 1. The Court's 1999 Judgment is Res Judicata

Res judicata precludes Caterina and Francesca from challenging the merits of the Court's 1999 judgment against the Gallinas. The doctrine of res judicata, or claim preclusion, holds that "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action."[8] Monahan v. New York City Dep't of

---

[8] The government argues that the Court's Order precludes Caterina and Francesca from litigating the underlying tax assessments against the Gallinas, but does not assert explicitly that the doctrine of res judicata bars the claim. Regardless, a court may raise the issue of res judicata sua sponte and bar a claim thereunder. Rollock v. Labarbera, No. 09–CV–3695, 2010 U.S. App. LEXIS 13351, at *1 (2d Cir. June 30, 2010).

Corrs., 214 F.3d 275, 284–85 (2d Cir. 2000); Greenberg v. Bd. of Governors of Fed. Reserve Sys., 968 F.2d 164, 168 (2d Cir. 1992); Maersk, Inc. v. Neewra, Inc., 554 F. Supp. 2d 424, 465 (S.D.N.Y. 2008) (barring later litigation where the "earlier decision was (1) final on the merits, (2) by a court of competent jurisdiction, (3) in a case involving the same parties or privies, and (4) involving the same cause of action"); Hirshfield v. United States, 177 F. Supp. 2d 220, 222 (S.D.N.Y. 2001) ("[R]es judicata only bars relitigation of tax liability involving the same claim and the same taxable year." (quoting Commissioner v. Sunnen, 333 U.S. 591, 597–98 (1948)); Hughes v. Lillian Goldman Family, LLC, 153 F. Supp. 2d 435, 447 (S.D.N.Y. 2001).

The Court's 1999 judgment meets the elements of res judicata to be accorded preclusive effect. First, the Court entered a final judgment against the Gallinas as to Count I of the complaint, which asserted that the Gallinas failed to pay $180,013.13 in income taxes for the 1981 tax period and $34,709.64 in income taxes for the 1982 tax period. The Gallinas accepted unconditional liability for these taxable years when they signed the Consent Stipulation allowing judgment to be entered against them. B&M Inv., LLC v. Calise (In re Calise), 354 Fed. Appx. 510, 512 (2d Cir. 2009); Greenberg, 968 F.2d at 168 ("The preclusive effect of a settlement is measured by the intent of the parties to the settlement."); White v. United States Postal Serv., No. 04–CV–602, 2005 U.S. Dist. LEXIS 6067, at *7 (E.D.N.Y. Feb. 16, 2005) (noting that the language of a settlement determines whether the parties intended the agreement to be final).

Second, the Court maintains uncontested jurisdiction over this case pursuant to 28 U.S.C. §§ 1340, 1345 and 26 U.S.C. § 7402(a).

Third, the daughters are in privity with the Gallinas because they are successors in interest to the Maspeth property, co-parties to the government's action against the Gallinas, and, in light of their representation that they dedicated their lives to caring for the Gallinas in

exchange for the Maspeth property, shared the same incentive to challenge the tax assessments. Esquire Trade & Fin., Inc. v. CBQ, Inc., 562 F.3d 516, 520 (2d Cir. 2009) (noting that privity exists between "those who are successors to a property interest, those who control an action although not formal parties to it, those whose interests are represented by a party to the action, and possibly co-parties to a prior action."); Modular Devices v. Alcatel Alenia Space Espana & Space Systems/Loral, Inc., No. 08–CV–1441, 2010 U.S. Dist. LEXIS 82773, at *10 (E.D.N.Y. Apr. 12, 2010); Mosdos Chofetz Chaim, Inc. v. Vill. of Wesley Hills, No. 08–CV–156, 2010 U.S. Dist. LEXIS 39113, at *41 (S.D.N.Y. Mar. 31, 2010) ("The core question is whether the parties' incentives to pursue [the] lawsuit were substantially similar.").

Finally, the Court's 1999 judgment determined the validity of the government's assessments for the 1991 and 1992 tax periods, which Caterina and Francesca attack here. Maharaj v. BankAmerica Corp., 128 F.3d 94, 97 (2d Cir. 1997)) ("The doctrine of res judicata states that once a judgment on the merits has been entered, subsequent litigation by the same parties or those in privity with them is barred if it concerns 'the [same] transaction, or series of connected transactions, out of which the [first] action arose.'" (alteration in the original)). The Gallinas could have raised each challenge that their daughters raise now, including whether the government complied with the three-year statute of limitations in making the assessments and satisfied the notice requirements for imposing the liens on the Maspeth property. Monahan, 214 F.3d at 285 ("[T]he claims asserted in the subsequent action . . . [must also have] been, or could have been, raised in the prior action."). Instead, the Gallinas settled with the government, executed the Consent Stipulation, and did not contest the Court's entry of judgment.

Despite the daughters' protestations to the contrary, collecting taxes assessed twenty-three years ago does not render the government's hands unclean, especially when the Gallinas

11

promised to pay them. Caterina and Francesca knew their interest in the Maspeth property was in jeopardy when the government alleged that the Gallinas conveyed the property to them fraudulently and sought to foreclose the federal tax liens. The daughters could have brought a quiet title action to determine who had the superior claim, 28 U.S.C. § 2410(a), but failed to do so. Ultimately, a lien "shall arise at the time the assessment is made and shall continue until the liability for the amount so assessed (or a judgment against the taxpayer arising out of such liability) is satisfied . . . ." 26 U.S.C. § 6322; United States v. Hodes, 355 F.2d 746, 748 (2d Cir. 1966). Therefore, the Court's 1999 judgment precludes Caterina and Francesca from challenging the validity of the government's tax assessments.

### 2. Caterina and Francesca Are Not "Purchasers" Within the Meaning of 26 U.S.C. § 6323

Caterina and Francesca are not "purchasers" of the Maspeth property. If a taxpayer transfers lien-encumbered property to a "purchaser" before the government records the lien, then the lien no longer attaches to the property and the "purchaser" takes the property free of the lien. 26 U.S.C. § 6323(a), (f); United States v. McCombs, 30 F.3d 310, 321–22 (2d Cir. 1994) (noting that "the relative priority of a federal tax lien is governed by federal law"); United States v. Sweeny, 418 F. Supp. 2d 492, 497 (S.D.N.Y. 2006); 26 C.F.R. § 301.6323(a)-1(a).

A "purchaser" is defined as "a person who, for adequate and full consideration in money or money's worth, acquires an interest (other than a lien or security interest) in property which is valid under local law against subsequent purchasers without actual notice." 26 U.S.C. § 6323(h)(6); Sweeny, 418 F. Supp. 2d at 497. Regulations promulgated by the United States Department of Treasury define "adequate and full consideration" as "consideration in money or money's worth having a reasonable relationship to the true value of the interest in the property acquired." Am. Ins. Co., 265 F. Supp. 2d at 439 ("The requirement of adequate and full

consideration is what sets a purchaser apart from a regular assignee and is a matter of federal law."); 26 C.F.R. 301.6323(h)-1(f)(3). "Money or money's worth" is defined as "tangible or intangible property, services and other consideration reducible to a money value," but excluding such things as "love and affection . . . or any other consideration not reducible to a money value." United States v. Morrell, 137 F. Supp. 2d 130, 136 (E.D.N.Y. 2001) (citing 26 C.F.R. 301.6323(h)-1(a)(3)).

The Gallinas transferred the Maspeth property to their daughters one month after the government assessed the unpaid taxes. Caterina and Francesca recorded the transfer six days later. The government filed notice of the liens seven months thereafter. Thus, if the daughters are "purchasers" of the Maspeth property within the meaning of 26 U.S.C. § 6323(h)(6), then the federal tax liens do not remain upon the Maspeth property and they take the property free of the liens. Yet, as "nothing of value [was] . . . furnished" for the immediate conveyance of the property, Caterina and Francesca are not "purchasers." United States v. Mac Cement Finishing Corp., 546 F. Supp. 52, 53 (N.D.N.Y. 1982) (discussing a case where the exchange of a promissory note for a twenty-five (25) percent interest in a proposed business venture was "valueless"). Francesca and Caterina's admissions, and the lack of any evidence to the contrary, leave nothing for a jury to decide: "[N]o actual money was paid upon the transfer for the Maspeth property. Again formal consideration has been paid during the past 30 years of caring for both my parents . . . The only formal consideration that was paid towards the transfer of the Maspeth property was to accept from both us the caring of our parents for the remain of their lives." (Pl.'s Ex. 5 ¶¶ 25–26.)

Still, the daughters allegedly expended money or services in four instances – though, as Francesca admitted, "There's no evidence that we pay any amount" – and argue that these

payments independently and in the aggregate have a reasonable relationship to the true value of their 100% interest in the Maspeth property. (Pl.'s Ex. 4 ¶¶ 28, 38–39; Pl.'s Ex. 5 ¶ 38–39.)

First, they claim to have contributed $14,000 to the down-payment on the Maspeth property in 1975. This constitutes past consideration because Caterina and Francesca contributed $14,000 twelve years before the Gallinas transferred the property to them. Payments made in the past do not constitute adequate and full consideration for the immediate conveyance of property. Sweeny, 418 F. Supp. 2d at 497–98 ("[P]ast and future payments are inadequate consideration to make [the transferee] a 'purchaser' under § 6232."); United States v. Phillips, 715 F. Supp. 81, 84 (S.D.N.Y. 1989). Further, a contribution of thirty-nine percent of the down-payment or thirteen percent of the purchase price does not bear a reasonable relationship to the Maspeth property's purchase price of $101,500, much less the true value of the never-appraised property at the time of transfer. Mac Cement Finishing Corp., 546 F. Supp. at 53–54 (finding that consideration of forty-five (45) percent of a property's fair market value "cannot be designated 'full' in any sense, even if it were possible to characterize it as 'adequate.'"). Even Francesca acknowledged, "If the question is strictly related to monetary consideration we have to admit that the transfer did not bore reasonable relationship." (Pl.'s Ex. 5 ¶ 29.)

Second, the daughters maintain that they expended $45,000-$50,000 in renovating the Gallinas' home in Sicily after the Gallinas transferred the Maspeth property's title to them. Caterina explained, "By donating the Maspeth property to us, it was understood that restoring the residence in Sicily was something to be done." (Pl.'s Ex. 4 ¶ 45.) Despite this alleged understanding, the costs of the renovation constitute future consideration because Caterina and Francesca expended the money in the 1990s, after the transfer of the property. A promise of future support, particularly to maintain the home of one's parents, is "insufficient as a matter of

14

law to be considered a fair equivalent of the property transferred." Sweeny, 418 F. Supp. 2d at 498 (citing Morrell, 137 F. Supp. 2d at 136–37, for the shared finding that a child's "promise to assume future payments [for his or her parents] is not adequate consideration."). Further, $45,000-$50,000 does not bear a reasonable relationship to the true value of the daughters' 100% interest in the Maspeth property, especially when Caterina conceded that the property's value has increased since its purchase in 1975. (Pl.'s Ex. 4 ¶ 28.)

Third, the daughters allege that they paid the Maspeth property's monthly mortgage, taxes, insurance, and upkeep before and after the title transfer. As noted, past and future payments do not constitute adequate and full consideration for the immediate conveyance of property. Sweeny, 418 F. Supp. 2d at 497–98 (finding the payment of carrying costs in the past and the assumption of future payments insufficient consideration to render a transferee a "purchaser"); Morrell, 137 F. Supp. 2d at 137 (discussing a New York State case in which the transferee's promise to pay the mortgage, taxes, and costs of upkeep was "insufficient as a matter of law to be considered a fair equivalent of the property transferred"). Again, Francesca recognized, "There was no intent in helping our parents in restoring the Maspeth property in the mid 80's, for a later transfer of the title," (Pl.'s Ex. 5 ¶ 40), and the daughters paid the mortgage only when the rent collected from tenants did not cover the payments. (Id. ¶ 52.)

Finally, the Caterina and Francesca assert that the oral promise to care for the Gallinas "for the remain of their lives" constituted adequate and full consideration for the transfer of the Maspeth property. (Id. ¶ 26.) Caterina explains, "The formal consideration towards the transfer of the Maspeth property was the taking care of our parents . . . . Not in monetary consideration, but in fact of human resources we had giving a lot." (Pl.'s Ex. 4 ¶ 26, 29.) While "money or money's worth" includes "services," the promise of parental support "is not 'adequate and full

15

consideration in money or money's worth' under any rational construction of the statute," even where the transferee ultimately fulfills the promise. Sweeny, 418 F. Supp. 2d at 498 (citing Morrell, 137 F. Supp. 2d at 136–37, for the proposition that an oral agreement promising to provide parental support is unenforceable under the statute of frauds).  Neither is the daughters' love and affection for the Gallinas. 26 C.F.R. 301.6323(h)-1(a)(3).

In my Report and Recommendation on the motion for default judgment, I determined that discovery might aid Caterina and Francesca in proving that they "had a reasonable expectation that their efforts contributed to this realty so as to give them a bona fide interest in it." United States v. Gallina, No. 97–CV–5532, 2007 U.S. Dist. LEXIS 98299, at *17–19 (E.D.N.Y. Nov. 20, 2007).  In the almost-three years since that decision, extensive discovery has failed to yield any evidence that Caterina and Francesca acquired a valid interest in the Maspeth property.

Based on the record, a reasonable inference cannot be drawn and a jury could not find that the daughters constitute "purchasers" of the Maspeth property. Am. Ins. Co., 265 F. Supp. 2d at 439 (placing the burden on the assignee to demonstrate with evidence that he or she qualified as a "purchaser" and granting the government's motion for summary judgment because the assignee failed to do so).  Therefore, the federal tax liens attached to the Maspeth property on November 2, 1987, the Gallinas conveyed the property to Caterina and Francesca subject to the liens, and the liens remain upon the property.

### III. Conclusion

For the foregoing reasons, I recommend that the Court grant the government's motion for partial summary judgment. Any objections to this R&R must be filed by ECF within fourteen (14) days. Failure to file objections within the specified time waives the right to appeal the District Court's order. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 72.

SO ORDERED.

Dated: September 28, 2010
Brooklyn, New York

/s/
JOAN M. AZRACK
UNITED STATES MAGISTRATE JUDGE